UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTOPHER M. BECKER,

Plaintiff,

-vs-                                                                    12-CV-804C

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,[1]

Defendant.

_____

APPEARANCES:                    REGINA A. WALKER, ESQ.
                                Jeffrey Freedman Attorneys
                                Buffalo, New York
                                Attorneys for Plaintiff

                                WILLIAM J. HOCHUL, JR.
                                United States Attorney, Western District of New York
                                (RICHARD D. KAUFMAN, AUSA, of Counsel)
                                Buffalo, New York
                                Attorneys for Defendant

This matter was transferred to the undersigned for all further proceedings, by order

of Chief United States District Judge William M. Skretny dated November 14, 2013 (Item

17).

Plaintiff Christopher Becker initiated this action pursuant to Section 405(g) of the

Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the

Commissioner of Social Security (the "Commissioner") denying plaintiff's application for

Social Security Disability Insurance benefits ("DIB"). The Commissioner has filed a motion

_____

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), she is substituted for former Commissioner Astrue as defendant in this case and no further action need be taken. *See* 42 U.S.C. § 405(g).

for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Item 18).  For the following reasons, the Commissioner's motion is granted.

## BACKGROUND

Plaintiff was born on October 13, 1975 (Tr. 78 ).[2]  He applied for DIB on April 21, 2008, alleging disability as of February 4, 2008 due to bipolar disorder, post traumatic stress disorder ("PTSD"), depression, and anxiety (Tr. 144).  Plaintiff's application was denied on July 1, 2008 (Tr. 79-82).  Plaintiff requested a hearing, which was held on June 9, 2010 before Administrative Law Judge ("ALJ") Bruce Mazzarella (Tr. 33-77).  Plaintiff testified at the hearing and was represented by counsel.

By decision dated June 24, 2010, the ALJ found that plaintiff was not under a disability within the meaning of the Social Security Act (Tr. 21-30).  The ALJ's decision became the Commissioner's final determination when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

Plaintiff then filed this action on August 27, 2012, pursuant to the judicial review provision of 42 U.S.C. § 405(g).  On December 2, 2013, the Commissioner filed a motion for judgment on the pleadings on the ground that the ALJ's determination must be upheld because it is supported by substantial evidence in the record (*see* Item 18).  Plaintiff declined to file either a cross motion or a response to the Commissioner's motion.

---

[2]  References preceded by "Tr." are to page numbers of the administrative record, filed by defendant as part of the answer to the complaint (Item 10).

**DISCUSSION**

**I. Scope of Judicial Review**

The Social Security Act states that upon district court review of the Commissioner's decision, "the findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401. The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D. Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

## II.  Standard for Determining Eligibility for Disability Benefits

To be eligible for Disability Insurance benefits and/or SSI under the Social Security Act, plaintiff must show that he or she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in 20 C.F.R. Pt. 404, Subpart P, App. 1 (the "Listings").  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.  Finally, if the claimant is not capable of performing his or her past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing other work which exists in the national economy, considering the

claimant's age, education, past work experience, and residual functional capacity. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002); 20 C.F.R. §§ 404.1520(g), 416.920(g).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Commissioner ordinarily meets her burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Pt. 404, Subpart P, App. 2 (the "Grids").[3] However, where the Grids fail to describe the full extent of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

In this case, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since February 4, 2008, the alleged onset date (Tr. 23). Upon review of plaintiff's medical records and hearing testimony, the ALJ found that plaintiff has severe impairments, including bipolar disorder, PTSD, panic disorder, and anxiety, but that these impairments were not of sufficient severity to meet or equal any of the impairments in the Listings (Tr. 24). The ALJ then determined that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with a non-exertional limitation to a low stress, low contact work environment (Tr. 25). Considering plaintiff's

---

[3]The Grids were designed to codify guidelines for considering residual functional capacity in conjunction with age, education and work experience in determining whether the claimant can engage in substantial gainful work existing in the nation economy. *See Rosa*, 168 F.3d at 78; *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

age, education, work experience, and RFC, the ALJ found that plaintiff was capable of performing his past relevant work as a dairy helper, kitchen helper/dishwasher, and machine operator (Tr. 29). Based on these findings, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act at any time from February 4, 2008 through the date of the decision (Tr. 30).

### III.  The Medical Record

Plaintiff's medical records indicate a history of bipolar disorder, anxiety, depression, and panic attacks. He was seen by Nurse Practitioner ("NP") Michael Cline approximately every other week from October 2007. NP Cline prescribed Lexapro, Trazodone, Risperdal, Klonopine, and Keppra. Plaintiff's mood was generally dysphoric with anxiety. He reported suicidal ideation without intent or plan on February 12,  2008 (Tr. 255-56) and July 19, 2008 (Tr. 306). In February and March 2009, plaintiff complained of financial and legal stressors and anxiety related to a court date regarding child support obligations (Tr. 346).

On April 1, 2009, plaintiff was admitted to the Olean General Hospital having consumed alcohol and sleeping pills. He denied suicidal ideation, admitted that he had been drinking heavily, and needed to sleep (Tr. 474). Plaintiff was released on April 9, 2009, calmer, alert, oriented in all spheres , and hopeful about returning to work (Tr. 397).

On June 5, 2009, plaintiff reported that his legal problems had been resolved and he described an overall sense of well-being (Tr. 405). On November 13, 2009, plaintiff reported that his mood stability and aggression had improved (Tr. 508). On March 26, 2010, plaintiff's mod was euthymic (Tr. 506).

On February 12, 2008, NP Cline completed an Attending Physician's Statement of Disability for Mental Health Claims for the Hartford Insurance Company (Tr 238-40). NP Cline stated that plaintiff had no ability to perform effectively under stress and minimal ability to perform work-related activities. He expected plaintiff's disability to last two to four weeks. *Id.*

In April 15, 2008, NP Cline completed a "Certification of Health Care Provider" (Tr. 324-28). He reported that plaintiff had a chronically depressed mood with suicidal ideations, behavioral dyscontrol, panic attacks, racing thoughts, and hyperactive behavior. NP Cline stated that plaintiff was"incapacitated." *Id.*

On October 20, 2009, NP Cline completed a Mental Residual Functional Capacity Questionnaire (Tr. 447-51). NP Cline opined that plaintiff was unable to do even unskilled work. He stated that plaintiff's impairments would cause him to miss more than four days of work each month. *Id.*

Plaintiff underwent a consultative psychiatric evaluation by Thomas Ryan, Ph.D. on June 21, 2008. Dr. Ryan diagnosed PTSD (Tr. 266). Plaintiff's thought processes were coherent and goal-directed, with no evidence of hallucinations, delusions or paranoia (Tr. 265). His attention and memory were intact, cognitive functioning was average, and insight and judgment were somewhat poor (Tr. 265). Dr. Ryan noted that plaintiff demonstrated no significant limitations in his ability to follow and understand simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks, and make adequate decisions (Tr. 266). Plaintiff was found to be moderately limited in his ability to deal with others or with stress. *Id.* Dr. Ryan concluded that plaintiff's prognosis is "fair" if he remains in treatment (Tr. 267).

On June 30, 2008, the medical record was reviewed by C. Butensky, who also completed a mental RFC assessment.  Dr. Butensky found mild limitations in activities of daily living and maintaining concentration, persistence or pace, and moderate limitations in social functioning (Tr. 283).

## IV.  Hearing Testimony

Plaintiff testified that Lithium calmed him and prevented manic phases (Tr, 52-53). Seroquel helps him sleep, and Lexapro sometimes helps with depression (Tr. 53).  He suffers from agoraphobia and sometimes stays inside for several days (Tr. 57).  Plaintiff stated that he spends time with his girlfriend.  He drives her to the store, buts stays in the car while she shops (Tr. 60-61).  He enjoys working on the computer, reading, walking, and cooking (Tr. 59-61).

Timothy Jankowski, a vocational expert ("VE"), testified that a person of plaintiff's age, education, and experience, limited to low stress work and a low contact work environment, would be able to perform the plaintiff's past jobs as a dairy helper and a dishwasher (Tr. 71-73).

## V.  The ALJ's Determination

In support of his RFC determination, the ALJ primarily relied on the consultative examination of Dr. Ryan, who found that plaintiff demonstrated no significant limitation in his ability to follow and understand simple instructions, perform simple tasks, maintain

attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks, and make adequate decisions (Tr. 266). During the examination, plaintiff was cooperative, his thought processes were coherent and goal-directed, and his cognitive functioning was average (Tr. 265-66). The ALJ considered the treatment notes of NP Cline and noted that a nurse practitioner is not an "acceptable medical source" whose opinion is entitled to controlling weight under the regulations. *See* 20 C.F.R. §§ 404.1513(a); 404.1527(a)(2), (d). The ALJ also noted the inconsistency between NP Cline's opinions that plaintiff was totally incapacitated with his examination findings that plaintiff's mood, sleep, appetite and energy were improving and that he was reporting a sense of well-being, particularly following the resolution of his legal difficulties (Tr. 28, 505-08).

Additionally, the ALJ evaluated plaintiff's testimony and found that, while plaintiff's impairments could be expected to produce his alleged symptoms, plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible. Although his condition fluctuated, plaintiff reported improvement on several occasions (Tr. 246, 248, 252, 254, 257, 346, 403, 405, 423, 505-08) and testified that he enjoyed reading and working on his computer, indicating an ability to concentrate greater than alleged (Tr. 61). Accordingly, the court finds that the ALJ properly considered the evidence and his determination, that plaintiff is capable of performing his past relevant work, is supported by substantial evidence in the record.

## CONCLUSION

The Commissioner's motion for judgment on the pleadings (Item 18) is granted. The Clerk of the Court is directed to close the case.

So ordered.

\s\ John T. Curtin

JOHN T. CURTIN
United States District Judge

Dated:   May 14, 2014